HON. SILAS A. HOLCOMB, } JUDGES.
HON. SAMUEL H. SEDGWICK, }

DEPARTMENT No. 1.
HON. WILLIAM G. HASTINGS,
HON. GEORGE A. DAY,
HON. JOHN S. KIRKPATRICK,

DEPARTMENT No. 2.
HON. JOHN B. BARNES,
HON. WILLIS D. OLDHAM,     COMMISSIONERS.
HON. ROSCOE POUND,

DEPARTMENT No. 3.
HON. EDWARD R. DUFFIE,
HON. JOHN H. AMES,
HON. I. L. ALBERT,

---

## ANNA M. WEBSTER V. JOSIAH L. KECK.

FILED FEBRUARY 19, 1902. No. 11,055.

Commissioner's opinion, Department No. 1.

1. Bailee: LIEN: AGREEMENT. "A lien does not attach in favor of a
   bailee of goods if inconsistent with the terms of the agree-
   ment, express or implied, under which his possession was ob-
   tained." *Moline, Milburn & Stoddard Co. v. Wood Mowing & Reaping
   Machine Co.*, 49 Nebr., 869.

2. ———: ———: ———: TENANT. Agreement to permit tenant under
   an expiring lease to leave his goods *in statu quo* for an agreed

5                                    (1)

sum of $10, payable monthly, with no right to retain goods to end of month, and no right to demand payment on removal reserved by the contract, creates no lien on the goods for unpaid storage.

ERROR from the district court for Buffalo county. Tried below before SULLIVAN, J. *Reversed.*

*William Gaslin,* for plaintiff in error.

*E. C.* and *H. V. Calkins, contra.*

HASTINGS, C.

In this action of replevin, at the close of the testimony, the court orally instructed for a verdict in favor of defendant: "That we find that at the commencement of this action the defendant had the right of possession of the goods described in the petition and special interest therein and that the value of his special interest is the sum of $85 and assess his damages for the detention at one cent." Plaintiff in error filed a motion for a new trial, with ten assignments of error; the first six being to the point that the state of the evidence did not warrant the action of the court; the seventh being for errors of law occurring at the trial; the eighth, that there was no finding as to the value of the property; the ninth, that there was no finding as to ownership; and tenth, that the verdict is not supported by the pleadings, as defendant merely denied generally. These assignments are renewed in the petition in error, with the additional one that the court instructed orally for the verdict. It is not necessary to consider this, as no objection on that ground was taken in the lower court either at the time or in the motion for a new trial. It seems equally unnecessary to examine the complaints as to the form of the verdict. It has been repeatedly held that a defendant under a general denial may prove and recover for attachment liens upon the property replevied. *Horkey v. Kendall,* 53 Nebr., 522, 527; *Merrill v. Wedgwood,* 25 Nebr., 283. It is hard to see why a warehouseman's lien, if it exists, should not be equally privileged to

be shown without pleading. It has also been expressly held that a finding for defendant that only fixes his right of possession and the value of his interest is sufficient, if within the value of the property as shown by the evidence. *Heffley v. Hunger*, 54 Nebr., 776. In this case we find no evidence of any value in the property, but it is alleged by plaintiff as being something over $100 at the commencement of the action, and plaintiff can hardly be heard to claim its value would not support a finding of an $85 interest in defendant.

The question mainly argued by counsel is whether or not any warehouseman's lien was in fact shown. Plaintiff claims that no actual keeping of a public warehouse was shown, and that defendant's evidence, so far as it went, tended merely to show a special contract for storage by the month, and no lien arose. Counsel for defendant seems to concede that, if there was any agreement inconsistent with a retention of possession on the part of defendant until payment, there can be no lien. The contention of plaintiff is that the agreement for payment by the month is inconsistent with such retention; that under it there could be no claim for payment until the expiration of a month, and no agreement that the property should remain for that length of time was shown. It seems that plaintiff's husband had been tenant of the building, and, at the close of his tenancy, asked leave to permit this property to remain until such time as it should be required to be moved. The property consisted of bricks, lumber, and a boiler and a large sheet-iron smokehouse, and was scattered all over the house, and occupied a large share of the floor. The "house" was known as "The Cold Storage Building." Under this arrangement, plaintiff's husband paid $10 monthly for two months, up to March 1, 1897, and some eight or nine months later she demanded the goods, and was refused them until storage should be paid "according to agreement." She then commenced this action. The action was commenced November 18, and the property removed a few days later. If the fact that plain-

tiff's husband, in arranging that these goods, which apparently had been in use in the building, might remain, agreed that $10 per month should be paid for such storage, created a lien for storage at that rate, the $85 was due, and a charge on the goods. The agreement does not seem to have been understood merely as one fixing the rate of payment. It was carried out for two months by the payment of $10 each month; tending to show that this was not a contract where goods were left in store, to be paid for on delivery. Plaintiff cites *Chase v. Westmore,* 5 M. & S. [Eng.], 180. In this case Lord Ellenborough held that, where grain had been delivered to be ground at 15 shillings a load, the fact that a price had been stipulated did not waive a lien, and that, as no time for payment had been fixed, payment to be made on delivery was presumed, and therefore a right to retain the property for payment remained. He indicates that a fixed time of payment would defeat the lien. *Cowell v. Simpson,* 16 Ves. [Eng.], 275, is also cited. In this case, Lord Eldon held that an attorney, in making a settlement with a client, and taking security for the amount due, waives his lien, and after the security has become due, and he has done other business, he has no lien on the papers in his hands for more than has accrued since the settlement. The implied contract to pay when the business was closed or taken away, having been once done away with, could not be renewed by mere action of law. *Walker v. Birch,* 6 Term Rep., 258, is simply a holding by Lord Kenyon that where cotton factors had received cotton on an express agreement to sell it and pay over the proceeds to the order of the depositor, and they sold it, no balance due from the depositor on other accounts could be charged against it inconsistently with the receipt. In *Chandler v. Belden,* 18 Johns. [N. Y.] 157*, a ship owner, who had agreed to carry salt from Turk's Island to New York for a certain price—$500 in advance, and the rest in equal payments at 30, 60 and 90 days after arrival in quarantine in New York—was held to have converted the

salt, in selling it for unpaid freight, though consignees had become insolvent. He was held to have no lien, because of having stipulated a time and manner of payment, especially as the time was subsequent to that of the agreed delivery of the salt. *Stoddard Woolen Manufactory v. Huntley,* 8 N. H., 441, is a case where a clothier, who was to receive his pay quarterly, was held to have no lien upon flannels dressed by him. His agreement to get pay quarterly was held to waive his right to demand his pay before surrendering the goods, which were presumably to be returned as finished and called for. The fact that payment had not been made as agreed could not be held to revive his lien. *Cummings v. Harris,* 3 Vt., 244, is trover for sheep which were to be kept and cared for till a certain time at 67 cents a head. Defendant, after caring for them and delivering their wool under his contract, refused to give them up until he should get his pay. The trial court was asked to instruct that he had no right to hold them, and refused to do so. This is held error. He had contracted for a definite sum, and reserved no lien. There was no stipulation for payment before they were taken away, and apparently none to leave them the full time. It does not appear whether or not they were kept the full time. In *Crawshay v. Homfray,* 4 B. & Ald. [Eng.], 50, a usage to pay a wharfinger at Christmas, whether the property was removed sooner or not, was held to prevent a lien on property that remained after that time without payment. See, also, *Moline, Milburn & Stoddard Co. v. Wood Mowing & Reaping Machine Co.,* 49 Nebr., 869. In this last case the fact that goods were held under a contract to be shipped on demand, and that a sight draft was to be drawn for any amount due, seems to be the main reason for holding there was no right to retain possession till payment and so no lien. The making of an agreement for monthly payments, with no agreement that the property should remain that long, or for payment when it should be removed, would seem to be inconsistent with a lien on defendant's part. If such a con-

tract is derivable from the evidence, the case should have been submitted to the jury on this question. If the contract, under the evidence, can not be regarded as one for general storage merely at a fixed rate, with no time of payment agreed upon, then the instruction should have been for plaintiff. It seems clear from the cases cited that if payment is to be made at a specified time, and there is no agreement that the goods remain till that time, the lien arising from an implied understanding that payment is to be made before delivery of the goods can not arise. Some of these cases—especially the older ones—use language implying that any specific contract does away with the implied one. It seems, however, to be clear that this is the case only when the express agreement is of such a nature as to indicate the parties did not intend also to be bound by the implied one to pay on delivery.

It is therefore recommended that the judgment of the district court be reversed, and the cause remanded.

Day and Kirkpatrick, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.